REGAN, Judge.
The plaintiff, Isiah Favorite, employed as a common laborer, instituted this suit against the' defendant, Johns-Manville Products Corporation, his employer, endeavoring to ■ recover compensation at the rate of $24.96 for a period of four hundred weeks, less thirty-two weeks of compensation previously paid or compensation for three hundred sixty-eight weeks, interest, costs and medical expenses for permanent total disability as a consequence of injuries incurred on March 30, 1950, to his left hand *346 and forearm, which was caught between a pulley and belt while he was engaged in cleaning lint from a piece of machinery.
Defendant answered admitting the occurrence of the accident, but denied that the plaintiff was permanently totally disabled to such an extent that he was unable to resume his former employment; that it had paid plaintiff all compensation due and furnished all necessary medical treatment, therefore, from the date of his discharge by its physician on November 9, 1950, plaintiff suffered no compensable disability nor was he in need of any further medical treatment.
From a judgment in favor of defendant dismissing plaintiff’s suit he has prosecuted this appeal.
The record reveals that on March 30, 1950, plaintiff was in the employ of the defendant as a common laborer earning a weekly wage of $39.28. His principal task consisted of carrying stacked shingles from a cutting machine to a table, whereupon they were, in turn, removed therefrom by other employees. The size and weight of the stack of shingles would vary according to the degree of congestion existing at the situs of the machine. When plaintiff was not engaged in this type of work, he performed inumerable other tasks which were characteristic of a common laborer.' On the aforementioned date plaintiff was endeavoring to clean the lint from a carrier belt when his left hand and forearm was inadvertently caught between the pulley and the belt. The belt was cut thus releasing plaintiff’s hand and arm and he was removed to the office'of Dr. Francis T. Gidman, defendant’s physician. Dr. Gidman later diagnosed his injuries as follows:
“He had received a crushing injury to his left forearm, with a. loss of motion and damaged tissues of the lower half of the radius; a fracture of the forearm.”
Dr. Gidman placed plaintiff’s left arm in a cast which permitted it to remain immobilized until May 10, 1950, or a period of five and one-half weeks, at which time the cast was removed; subsequently plaintiff was referred to Dr. Rufus H. Alldredge, who again placed his left arm in a cast which remained on his arm from July 18, 1950 to August 15, 1950, or a period of four weeks. Plaintiff received compensation from the defendant until November 9, 1950, when payment thereof was permanently discontinued on the assumption that plaintiff had completely recovered, suffered no further compensable disability and could resume his former employment. Plaintiff has not engaged in any significant work since the occurrence of the accident.
As related hereinabove, the trial judge dismissed plaintiff’s suit,' being of the opinion that “the only controversial question involved is the extent of petitioner’s injury and the resulting disability therefrom and on this question the medical testimony is preponderantly in favor of the defendant.”
Plaintiff, on appeal, contends that the trial judge committed reversible error in dismissing his suit, for the reason that the defendant’s medical evidence conclusively supports his claim for permanent total disability or, alternatively, entitles him to an award for permanent partial disability.
Defendant insists, that while its physicians evaluated plaintiff’s permanent partial disability at from five to fifteen percent of the left hand and forearm that, nevertheless, they were of the opinion that plaintiff could resume his former employment, un-handicapped by virtue of the residual effect of this injury and engage in the most vigorous form of hard manual labor, therefore, when plaintiff refused to resume his employment as of November 9, 1950, defendant was legally justified in discontinuing compensation payments to the plaintiff.
The only question which has been posed for our consideration is whether plaintiff incurred either permanent total, permanent partial or no disability as a result of the accident of March. 30, 1950.
Dr. T. ’T. Batson, plaintiff’s medical expert, related that he had been practicing as a physician and surgeon for approximately thirty-eight years and while he was not a specialist in orthopedics, he had, in the *347 course of years, acquired considerable experience in this field of medicine. He initially examined plaintiff on July 21, 1951, or about one year and four months after the accident. He was of the opinion that the plaintiff was not “able to do the same type of work that he was engaged in at the time of his accident; consequently, for the same type of laborious work and his inability to rotate his arm and flex his fingers for grasping, he is 100% disabled for the same type of labor or any other sort of labor.”
Dr. Gidman, a physician and surgeon, was the first doctor who administered to the plaintiff and with reference to plaintiff’s disability, he related that his left forearm was permanently partially disabled from •ten to fifteen percent.
Dr. Rufus H. Alldredge, a specialist in orthopedics, appeared on behalf of the defendant and related that plaintiff was capable of resuming his former occupation, although he was of the opinion that plaintiff had incurred a permanent partial disability of five to ten percent to the left hand and forearm.
Dr. Harry D. Morris, also a specialist in orthopedics, likewise appeared on behalf of defendant and related that he had occasion' to examine plaintiff on September 22, 1951, about one year and six months after the accident. He expressed the opinion that plaintiff had incurred a fracture of the radius which had healed with a small amount of deformity and because of the small amount of limitation of rotation and inability to competely flex his fingers, he had a partial disability, which is probably permanent to the extent of ten or fifteen percent of the forearm and hand. He was also of the opinion that the arm had healed sufficiently so that plaintiff could resume his former occupation.
The answer to the question of whether or not an employee is permanently totally or permanently partially disabled must logically be predicated' on the medical evidence adduced during the course of the trial. The court below concluded that the medical evidence preponderated in favor of the defendant. We are not unmindful that on questions of fact and the credibility of witnesses the trial judgels findings should be given great weight and are not to be reversed ‘on appeal except where manifest error exists. However, the record absolutely reflects that defendant’s own medical experts expressed the opinion, that as a result of the accident plaintiff incurred a permanent partial disability of five to fifteen percent to his left hand and forearm. Plaintiff’s medical expert was of the opinion that his disability was permanent and amounted to one hundred percent. We are, therefore, compelled to conclude from the record that the medical testimony preponderated in favor of the plaintiff and that he incurred at least a fifteen percent permanent partial disability to the left forearm and hand.
Plaintiff earned $29.28 per week; 15% of 65% of his wage amounts to $3.83 per week. He was totally disabled from the date of the accident, March 30, 1950. until November 9, 1950, or a period of thirty-two weeks for which period he has been paid compensation and furnished with medical and surgical treatment, therefore, for the remaining one hundred and sixty-eight weeks he is entitled to the sum of $3.83 per week. Loflin v. Erectors & Riggers, Inc., La.App.1953, 68 So.2d 694.
For the reasons assigned the judgment appealed from is annulled, avoided and reversed and it is now ordered that there be judgment herein in favor of plaintiff, Isiah Favorite, and against the defendant, Johns-Manville Products Corporation, in the sum of $3.83 per week for a period of one hundred. and sixty-eight weeks, plus legal interest- on all delinquent installments and for all costs including the fee of his medical expert.
Reversed.